# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | § |
| Plaintiff, | § § § |
| v. | § CRIMINAL NO. 4:15-CR-216-ALM-CAN |
| NOAH RONTE GLADSTONE | § § § |
| Defendant. | § |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Pending before the Court is Defendant Noah Ronte Gladstone's ("Defendant") Motion to Suppress Evidence and Statements ("Defendant's Motion") [Dkt. 33]. On June 20, 2016, the undersigned conducted a hearing and heard witness testimony and oral argument from both the Government and Defendant. After considering the Motion [Dkt. 33], Response [Dkt. 38], all other relevant filings, and reviewing the record of June 20, 2016, the Court recommends that Defendant's Motion [Dkt. 33] be **DENIED**.

## BACKGROUND

On September 30, 2015, Officer Brandon Blair ("Officer Blair") of the Van Alstyne Police Department encountered a vehicle driven by an individual whom Officer Blair recognized as Defendant [Dkt. 33 at 1]. Officer Blair believed Defendant to have outstanding warrants for his arrest and a suspended driver's license. *Id*. Officer Blair followed Defendant and requested dispatch to verify the existence of the outstanding warrants and the suspension of Defendant's license [Dkt. 39 at 9]. Defendant subsequently pulled his vehicle to the side of the road with his emergency lights flashing and exited the vehicle. *Id*. at 7. Officer Blair turned his vehicle, pulled in behind Defendant, and made contact with Defendant. *Id*. at 7-8. Dispatch then

confirmed the existence of Defendant's outstanding warrants and suspended license [Dkt. 33 at 2; Dkt. 39 at 9]. Defendant had three warrants for his arrest for speeding, driving while license invalid, and failure to appear. *Id*. Officer Blair again approached Defendant and placed him under arrest. *Id*. Defendant had a cell phone in his pocket at the time of arrest. *Id*.

While being escorted to Officer Blair's patrol car, Defendant asked Officer Blair if he could call his family to pick up his vehicle [Dkt. 33 at 2]. Officer Blair denied the request and placed Defendant in the back of the patrol car. *Id*. Once Defendant was in the back of the patrol car, Officer Blair contacted Adam's Towing and proceeded to prepare Defendant's vehicle for impound by completing an Inventory Form Sheet and making an inventory search of Defendant's vehicle. *Id*.

Before initiating the search, Officer Blair asked Defendant if there was anything of value in his vehicle [Dkt. 39 at 12]. Defendant advised there was nothing of value in the vehicle and Officer Blair proceeded to perform the inventory search in accordance with the Van Alstyne Police Department Vehicle Impoundment and Inventory Policy (the "Impoundment and Inventory Policy") [Government's Ex. 1]. During the inventory search, Officer Blair saw a bulge under the driver's side floor mat and a black cloth covering the same [Dkt. 39 at 11-12]. After removing the floor mat and cloth, Officer Blair discovered a loaded silver Rossi .22 caliber revolver (the "Firearm") [Dkt. 33 at 2]. Officer Blair then contacted dispatch to determine if Defendant had any previous felony convictions [Dkt. 39 at 19]. Dispatch confirmed at the scene that Defendant had previously been convicted of felony aggravated assault with a deadly weapon. *Id*.; *see* TEX. PENAL CODE § 22.02. Officer Blair noted the presence of the Firearm as well as a pair of pants and a gas can on the Inventory Form sheet [Government's Ex. 2]. After discovery of the gun, and while Officer Blair was still performing the inventory search,

Defendant's grandparents arrived at the scene and asked if they could take the vehicle [Dkt. 33 at 2; Dkt. 39 at 12-13]. Officer Blair denied their request. *Id*. Defendant's vehicle was thereafter towed. *Id*.

Defendant was taken to the Van Alstyne Police Station, read his *Miranda* rights, and gave a statement to Officer Blair [Dkt. 33 at 2]. While processing Defendant at the Van Alstyne Police Station, Officer Blair reviewed his patrol car back seat video camera footage [Dkt. 39 at 22-23]. On the video footage, Officer Blair observed Defendant, handcuffed and in the back seat of the patrol car, retrieve his cell phone from his pocket and contact an individual later identified as Defendant's grandfather. *Id*. The following is Defendant's conversation with his grandfather:

> [Grandfather:] Hello?
> [Defendant:] Pop?
> [Grandfather:] Yeah.
> [Defendant:] Pop there is a pistol in the car. They found it, its not stolen. I need you to tell them it's yours and you left it under the seat please.
> [Grandfather:] I can't understand what you are talking about.
> [Defendant:]There is a pistol in the car. I need you to tell them it's yours and you left it under the seat.
> [Grandfather:] I don't know what you're saying. I can't understand you.
> [Defendant:] Pop. Pop. There is a pistol in the car. They found it. It's not stolen…
> [Grandfather:] Hey, hey, hey, stop.
> [Defendant:] There is a …
> [Defendant:] Pop. Pop. I can't say it too many times. There is a pistol in the car.
> [Grandfather:] Huh?
> [Defendant:] There is a pistol in the car.
> [Grandfather:] Oh god…
> [Defendant:] It's under the seat. I need you to tell them it's yours.
> [Grandfather:] Shit, boy.
> [Defendant:] It's clean. It's clean.

[Defendant:] Hurry up and get here.

[Grandfather:] All right.

[Dkt. 38 at 3-4].[1]

On June 3, 2016, Defendant filed the instant Motion seeking to suppress any and all physical, documentary, and other evidence seized following his arrest [Dkt. 33 at 1]. On June 15, 2016, the Government filed its Response in Opposition to Defendant's Motion to Suppress [Dkt. 38]. On June 20, 2016, the Court conducted a hearing on Defendant's Motion ("Hearing") [Dkt 36]. At Hearing, Officer Blair testified for the Government and the Government further proffered clips from a body camera video taken at the time of Defendant's arrest ("Body Camera Video") and clips from Officer Blair's patrol car back seat video camera ("Back Seat Video") [Government's Ex. 3]. The Government also presented the Impoundment and Inventory Policy [Government's Ex. 1] and Officer Blair's Vehicle Impoundment Record [Government's Ex. 2]. Defendant presented no witnesses. The Court heard oral arguments from each of the Government and Defendant.

## ANALYSIS

In his Motion to Suppress, Defendant asserts that his Fourth, Fifth, and Sixth Amendment rights were violated [Dkt. 33 at 1]. Specifically, Defendant argues that the initial stop by the police, impoundment of his vehicle, and subsequent inventory search, were without a warrant and without probable cause making all physical, documentary, and other evidence seized following his arrest inadmissible. *Id.* In response, the Government contends Defendant had multiple outstanding warrants for his arrest and that any evidence seized or obtained following

---

[1] The transcription of the cell phone call was completed by the Government; Defendant does not object to the transcription and agrees that the transcript is in substantial part a true and correct recitation of what is said in the recording [Dkt. 39 at 35].

REPORT AND RECOMMENDATION – Page 4

Defendant's arrest falls under the inventory search exception to the warrant requirement [*see generally* Dkt. 38]. The Court analyzes each of the Parties arguments herein.

## I. *Defendant's Arrest*

As an initial matter, each of the Government and Defense counsel agree that Defendant was legally arrested pursuant to one or more valid arrest warrants [Dkt. 39 at 59; *see generally* Dkt. 38]. Officer Blair specifically testified that he recognized Defendant from previous encounters and knew Defendant had outstanding warrants for his arrest [Dkt. 39 at 6, 25, 37-38]. After making contact with Defendant, it was confirmed by dispatch that Defendant had at least three outstanding warrants for his arrest. *Id*. at 7-8, 10. Officer Blair further noted at the scene Defendant was driving without a license. *Id*. It is the policy of the Van Alstyne Police Department to arrest any individual with a valid outstanding warrant, regardless of the type of warrant.[2] *Id*. at 41-43.

## II. *The Impound and Inventory Search of Defendant's Vehicle*

Subsequent to Defendant's arrest, Officer Blair completed an inventory search of Defendant's car [Dkt. 33 at 2]. Defendant contends that this inventory search and the discovery of the Firearm during same violated his constitutional rights [*Id*. at 2-3]; while the Government argues, conversely, that impound of the vehicle was justified and the related search was performed in accordance with established protocol of the Van Alstyne Police Department when impounding vehicles, making it a valid inventory search [Dkt. 38 at 4-5].

### a. *Applicable Law*

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST.

---

[2] Further, the Supreme Court has articulated that "a warrant is a judicial mandate to an officer to conduct a search or make an arrest, and the officer has a sworn duty to carry out its provisions." *United States v. Leon*, 468 U.S. 897, 920, n.21 (1984) (internal quotation marks omitted).

amend. IV. Accordingly, per the Fourth Amendment, a warrant is generally required prior to the search of an individual's vehicle. *United States v. Privett*, 68 F.3d 101, 103 (5th Cir. 1995). However, it has long been established that an "inventory search" exception exists to this warrant requirement. *Id.* (citing *United States v. Andrews*, 22 F.3d 1328, 1333-34 (5th Cir. 1994)). The inventory search exception serves three primary purposes: (1) to protect the car owner's property while it is in police custody; (2) to protect the police from claims of lost or stolen property; and (3) to protect the police and public from potential danger. *Id.* Prior to finding an inventory search valid, there must be "a reasonable and proper justification for the impoundment of the vehicle." *South Dakota v. Opperman*, 428 U.S. 364, 376 (1976). If impoundment is justified, in order for the search to fall within the inventory search exception, "[the search] must be performed according to standard regulations and procedures, consistent with the proper purpose of a noninvestigative inventory search." *Privett*, 68 F.3d at 103 (citing *United States v. Gallo*, 927 F.2d 815, 819 (5th Cir. 1991)). For the policies and subsequent search to be noninvestigative, "inventory policies must be adopted which sufficiently limit the discretion of law enforcement officers to prevent inventory searches from becoming evidentiary searches." *United States v. Foots*, 340 F. App'x 969, 973 (5th Cir. 2009) (quoting *United States v. Andrews*, 22 F.3d 1328, 1336 (5th Cir. 1994)).

      b.    *Van Alstyne Impoundment and Inventory Policy*

At Hearing, Officer Blair testified that officers must abide by the Impoundment and Inventory Policy when impounding an arrestee's vehicle [Dkt. 39 at 41-43; *see generally* Government's Ex. 1]. The Government proffered the Impoundment and Inventory Policy, which sets out the specific standards and procedures to be followed by all Van Alstyne Police officers when impounding and completing an inventory search of vehicles [Government's Ex. 1 at

Section I]. The Impoundment and Inventory Policy states that leaving a vehicle at a scene may put it at substantial risk of "theft or damage to the vehicle or personal property contained therein." *Id*. at Section III(K)(1). As such, officers are required under certain circumstances to impound and to complete an inventory prior to any vehicle being towed. *Id*. at Section V(A),(B). The "Inventory" provisions of the Impoundment and Inventory Policy expressly state that a "motor vehicle inventory is an administrative procedure designed to protect vehicles and their contents while in departmental custody." *Id*. at Section V(A)(1). The purpose of which is to "protect the owner's property and to protect the department against claims and possible dangers." *Id*. Officers can therefore perform inventories without a warrant when either: "a. [t]he vehicle has been lawfully seized or impounded" or "b. [b]efore towing the vehicle for violations, safety reasons, or other purposes as defined by law." *Id*. at Section V(A)(1)(a)-(b). The scope of an inventory search "extends to all areas of the vehicle in which personal property or hazardous materials may reasonably be found." *Id*. at Section V(C)(2).

  *c.* ***The Impound: Refusal to Release Vehicle to Defendant's Grandparents and Lock and Leave Vehicle***

At Hearing, Defendant argued Officer Blair improperly impounded the vehicle contrary to the Impoundment and Inventory Policy [Dkts. 33 at 2; 39 at 59-61]. Defendant argued that he requested to have his family retrieve the vehicle and further that the vehicle was in a legal parking space at the time of his arrest; each of which are circumstances under the Impoundment and Inventory Policy whereby Officer Blair should not have impounded the vehicle (and subsequently inventoried its contents). *Id*. at 59-62.

The Impoundment and Inventory Policy states in pertinent part that:

1. Vehicles belonging to arrested persons, if left at the scene of the arrest, may be at substantial risk of theft or damage to the vehicle or personal property contained therein. It is therefore the policy of this department to tow all prisoner's vehicles to an impound lot at the owner's expense for protection of the vehicle, unless:

   a. There is a friend or relative *at the scene*, and the arrestee wishes to release the vehicle to them, they possess a current driver's license, and the arrestee consents to the release either in writing or on the audio/video in-car recording system. [Hereinafter ("condition one")]

   b. The arrestee agrees to lock and leave the vehicle in a legal parking space, where a parking violation will not occur before arrangements can be made to recover the car. [Hereinafter ("condition two")]

[Government's Ex. 1 at Section III(K)(1)(a),(b) (emphasis added)].

No friend or relative of Defendant was present at the scene to take possession of Defendant's vehicle at the time of arrest. In addition, at the time Defendant's grandparents arrived, Officer Blair advised them that Defendant's vehicle was going to be impounded [Government's Ex. 3 at 22:30-59]. Thus, Defendant does not meet the first condition on its face. *See id.* at Section III(K)(1)(a),(b).

With respect to Defendant's second argument — that Defendant's vehicle was in a legal parking space — the Parties do no dispute that the vehicle was legally parked. However, Defendant's argument ignores Section III(K)(2) of the Impoundment and Inventory Policy directing Officer Blair to tow the vehicle "if he or she believes the above methods of vehicle release [(i.e., condition one and two)] would not properly protect the vehicle or its contents." *Id*. To reiterate, under the Impoundment and Inventory Policy, officers are directed to impound absent the existence of conditions one and two; and notwithstanding such conditions, officers are further directed to impound, in any event, if needed to protect the vehicle or its contents. *Id*. at Section III(K)(1)(a),(b), Section III(K)(2).

At Hearing, Officer Blair described the area in which Defendant's vehicle was parked upon arrest [Dkt. 39 at 11, 17-18]. Specifically, Officer Blair stated that the area was a newly developed residential area where construction remained ongoing, that Defendant's vehicle in fact was situated directly in front of the contractor's office where significant amounts of construction traffic occurred. *Id*. at 8-9. Office Blair testified that he believed that "a semi-truck pulling a large amount of sod or construction equipment could make [a] turn and possibly damage the vehicle" if left on the side of the street. *Id*. at 17-18. Officer Blair also testified that the residential area had previously experienced thefts, and the vehicle could potentially have been broken into. *Id*. Officer Blair testified that even though in a legal parking space he felt, "to protect the integrity of the vehicle[,]" it should be impounded because "it's going to be a risk of theft ... and we're going to be held accountable for leaving it there." *Id*. at 11, 53. Officer Blair further expounded, in connection with the risk of theft, that the type of vehicle does not matter because "[i]t's their personal vehicle ... [i]t means something to them." *Id*. at 48.

Moreover, the Impoundment and Inventory Policy further directs officers to tow a vehicle involved in the commission of a crime [Government's Ex. 1 at Section III(K)(3)(a)]. Specifically, Section III(K)(3)(a) states: "A vehicle shall be towed if subject is arrested and one of the following circumstances exists: (a) [t]he vehicle was used in a crime; [or] (b) [t]he vehicle contains evidence of a crime that cannot be processed at the scene." *Id*. In the present case, Defendant did not have a valid Texas driver's license and was witnessed by Officer Blair to be driving the vehicle [Dkt. 39 at 6]. Defendant argues that his arrest for driving while license invalid and/or his other outstanding warrants (class C misdemeanor offenses) did not warrant impoundment of his vehicle [Dkt. 33 at 2]. However, under similar circumstances, other courts have found it reasonable to impound a vehicle. *United States v. McKinnon*, 681 F.3d 203, 208

(5th Cir. 2012); *see also Opperman*, 428 U.S. at 376 (stating that the courts must focus on the reasonableness of the impound). For example, in *McKinnon*, which the Government cites in their Response, the defendant's vehicle was impounded after the defendant was stopped for driving with an expired vehicle registration. *Id*. at 209. The Fifth Circuit ruled that the officer's decision to tow the vehicle was reasonable given the burglaries in the area, the possibility of the vehicle being a nuisance on a public street, to prevent the vehicle from being stolen or damaged, and because the vehicle's registration was expired. *Id*. at 208-09 (holding that the impoundment of a vehicle which had an expired registration was reasonable under the community care-taking exception); *see also Opperman*, 428 U.S. at 375-76 (holding that the impoundment of a vehicle for multiple parking violations was reasonable). Again, Officer Blair testified that the car was in danger of being damaged by passing construction trucks, there was a possibility of theft, and he believed the vehicle would be a nuisance on the street [Dkt. 39 at 11, 17-18]. *McKinnon*, 681 F.3d at 208-09. Defendant was also driving while his license was invalid [Dkt. 33 at 2]. The Court finds that upon consideration of the totality of the aforementioned circumstances Officer Blair had a reasonable and proper justification for impounding Defendant's vehicle. *Opperman*, 428 U.S. at 376.

### d. *The Inventory: Discovery of the Firearm*

Based on the reasonable and proper justification to tow Defendant's vehicle, the inquiry then turns to the scope and manner of Officer Blair's inventory search of Defendant's vehicle. The Supreme Court has laid out specific guidance to help lower courts navigate the inventory search exception analysis and the legality of police policies regarding inventory searches. In *Colorado v. Bertine*, officers stopped a defendant for driving while intoxicated and subsequently took defendant into custody. *Colorado v. Bertine*, 479 U.S. 367, 368 (1987). Before the tow

truck arrived to impound defendant's vehicle, officers performed an inventory search of the vehicle. *Id.* at 368-69. During the inventory search, officers came across a closed backpack behind the driver's seat. *Id.* Upon opening the backpack, officers discovered controlled substances, cocaine paraphernalia, and large amounts of cash. *Id.* At the defendant's suppression hearing, the police department presented their policy, which mandated police officers inventory all contents, including opening closed containers and inventorying the items therein. *Id.* at 369-70. Because the officers were acting in good faith and following the mandated policies of inventorying items in closed containers, the Supreme Court held that the defendant's Fourth Amendment rights were not violated when the officers performed an inventory search of his vehicle. *Id.* at 374-75. In *Florida v. Wells*, officers stopped a defendant for speeding and subsequently arrested defendant for driving while intoxicated. *Florida v. Wells*, 495 U.S. 1, 2 (1990). During the inventory search of Defendant's vehicle, officers discovered two marijuana cigarette butts in the ashtray and a locked suitcase in the trunk. *Id.* The officers proceeded to open the locked suitcase, which revealed a large amount of marijuana. *Id.* The defendant was subsequently charged with possession of a controlled substance. *Id.* The Supreme Court held that the drugs should be suppressed because, unlike *Bertine*, there was no evidence in the record of any police policy allowing police officers to look into or open closed containers. *Id.* at 4-5; *but see Bertine*, 479 U.S. at 374-75. Absent a policy allowing officers to look in and/or open bags during an inventory search, the search in *Wells* was investigative and not "sufficiently regulated to satisfy the Fourth Amendment." *Id.* at 5.

Here, as in *Bertine*, Officer Blair was taking inventory of Defendant's vehicle pursuant to the Impoundment and Inventory Policy when he discovered a bulge under the floor mat [Dkt. 39 at 11-12]; *see also Bertine*, 479 U.S. at 369. Again, the scope of the inventory under the

Impoundment and Inventory Policy "includes all open and closed containers and compartments and any locked containers or compartments as long as the officer has a key" and "the inventory extends to all areas of the vehicle in which personal property or hazardous material may reasonably be found [Government's Ex. 1 at Section V(C)(2)]. Thus, as the Impoundment and Inventory Policy explains, Officer Blair was required to look around the driver's side seat once he observed the bulge to ensure there was: (1) nothing dangerous to himself or the public and also (2) to inventory all of Defendant's personal belongings. *Id.*; *see also Privett*, 68 F.3d at 103. Officer Blair was not performing an investigatory search based on suspicion; rather, he was performing a basic inventory search and looking in reasonable locations defined pursuant to the Impoundment and Inventory Policy. *Id.* Items placed around and under a driver's side seat are a location "in which personal property or hazardous materials may reasonably be found" [Government's Ex. 1 at 7].[3] When there are reasonable police regulations relating to inventory procedures, and the procedures are administered and performed in good faith, then the Fourth Amendment requirements are satisfied.[4] *Bertine*, 479 U.S. at 374 (1987). Officer Blair's inventory of items around the driver's seat was a good faith execution of a reasonable police regulation and was therefore, within the bounds of the Fourth Amendment. *Id.*

### III. *Defendant's Phone Call in Officer Blair's Patrol Car*

Defendant also argues in his Motion that the statements he made in Officer Blair's patrol car should be suppressed because they are the result of the initial illegal stop [Dkt. 33 at 3]; *see supra* page 4. The Government responds that Defendant's arrest was clearly legal, and in any

---

[3] Further, at the Hearing, Officer Blair testified that he was intending to protect the contents of the vehicle, not conduct an evidentiary search [Dkt. 39 at 13].

[4] Although the Impoundment and Inventory Policy gives officers some discretion in determining where to search, the Fifth Circuit has held that not all police discretion is a violation of the Fourth Amendment. *United States v. Judge*, 864 F.2d 1144, 1145-46 (5th Cir. 1989) (stating that police discretion is unconstitutional when done on the basis of suspicion of criminal activity).

event, Defendant had no reasonable expectation of privacy in the back seat of Officer Blair's police vehicle [Dkt. 38 at 6].

Evidence acquired during an unlawful search and seizure cannot constitute "proof against the victim of the search." *Wong Sun v. U.S.*, 371 U.S. 471, 484 (1963) (citing *Weeks v. U.S.*, 232 U.S. 383 (1914)). However, in *Wong Sun*, the Supreme Court explained:

> We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.

*Wong Sun*, 371 U.S. at 487-88 (internal quotation marks omitted). In order to determine whether the evidence should be excluded, the court must examine "whether the evidence was come at by [sic] exploitation of illegality rather than by means sufficiently distinguishable to be purged of primary taint" *Id.* at 485. Said another way, for evidence to be considered "poisonous," the evidence must come about from the exploitation of some illegal police action or course of action. *Id.*

As previously discussed, Officer Blair's stop, arrest, and search of Defendant and his vehicle were lawful. *See supra* page 5, 7-11. Not only did Officer Blair recognize Defendant, he recalled and confirmed Defendant had outstanding warrants, which allowed him to legally stop and arrest Defendant [Dkt. 33 at 2]. Subsequently, the Impoundment and Inventory Policy justified impound of the vehicle, mandating Officer Blair perform an inventory search. *See supra* page 7-11. A primary requirement of *Wong Sun* and the "fruit of the poisonous tree" analysis is the establishment of an illegal police action. *Id.* at 3; *Wong Sun*, 371 U.S. at 487-88. There is no illegal police action here. The statements made by Defendant after being placed in the patrol car were not due to illegal police procedures because the stop, arrest, and search of

Defendant and his vehicle are valid. Thus, Defendant's statements in the back seat of the police car are not fruit of the poisonous tree. *Id.*

In addition, Defendant did not have an objectively reasonable expectation of privacy in the back seat of Officer Blair's patrol car. *United States v. Webster*, 775 F.3d 897, 903-04 (7th Cir. 2015); s*ee also United States v. Dunbar,* 553 F.3d 48, 57 (1st Cir.2009); *United States. v. Turner,* 209 F.3d 1198, 1200–01 (10th Cir. 2000); *United States v. Clark,* 22 F.3d 799, 801–02 (8th Cir. 1994); *United States v. McKinnon,* 985 F.2d 525, 527–28 (11th Cir. 1993); *United States v. Fridie,* 442 F. App'x. 839, 841 (4th Cir. 2011); *United States v. Carter,* 117 F.3d 1418 (5th Cir. 1997). In *Webster*, the Seventh Circuit stated, and this Court agrees, that society does not reasonably expect to have privacy while in the back seat of a police car. *Webster*, 775 F.3d at 904. In coming to this conclusion, the Seventh Circuit described the numerous amounts of electronics in a police vehicle and the visible presence of devices that would be capable of transmitting any internal communications. *Id.*; *see Turner*, 209 F.3d at 1201 ("Patrol cars bristle with electronics, including microphones to a dispatcher, possible video recording with audio pickup, and other electronic and recording devices"); *Clark*, 22 F.3d at 801-02 ("[a patrol car] is essentially the trooper's office, and is frequently used as a temporary jail for housing and transporting arrestees and suspects"). Here, Defendant was faced with a similar array of electronics when he made the phone call to his grandfather [Dkt. 33 at 2]. Following the Fifth Circuit (and six other circuit courts), Defendant did not have a reasonable expectation of privacy when in the back of Officer Blair's patrol car.[5]

---

[5] The Court notes the recent Supreme Court decision, *Utah v. Strieff*, and the Supreme Court's discussion of *Wong Sun* and the Fourth Amendment. *Utah v. Strieff*, —U.S.—, 136 S. Ct. 1001 (2016). Nothing in *Strieff* alters the Court's reasoning or analysis as applied to the present issue herein.

REPORT AND RECOMMENDATION – Page 14

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court finds that Officer Blair's impoundment and inventory search of Defendant's vehicle was proper, and therefore, recommends Defendant Noah Ronte Gladstone's Motion to Suppress Evidence [Dkt. 33] be **DENIED**.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 29th day of June, 2016.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE